IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AMIR S. FERGUSON, | ) | |
| | ) | |
| Petitioner, | ) | Civil Action No. 2:18-cv-1650 |
| | ) | |
| v. | ) | |
| | ) | Magistrate Judge Patricia L. Dodge |
| J. LUTHER, *et al.*, | ) | |
| | ) | |
| Respondents. | ) | |

**MEMORANDUM**

Pending before the Court[1] is the amended petition for a writ of habeas corpus filed by state prisoner Amir S. Ferguson ("Petitioner") pursuant to 28 U.S.C. § 2254. (ECF No. 26.) For the reasons set forth below, the Court will deny the amended petition because each of Petitioner's claims are procedurally defaulted and will deny a certificate of appealability.

## I.    Relevant Background[2]

Petitioner is serving a life sentence on a second-degree murder conviction imposed by the Court of Common Pleas of Allegheny County in his criminal case at CP-02-CR-12295-2010. In that case, the Commonwealth charged Petitioner with one count of criminal homicide; three counts of attempted homicide; three counts of aggravated assault of a law enforcement officer; five counts of aggravated assault; one count of robbery; one count of burglary; one count of carrying a firearm without a license; four counts of recklessly endangering another person; and one count of conspiracy to commit robbery. These charges were filed after an incident, described below, in

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties voluntarily consented to have a U.S. Magistrate Judge conduct proceedings in this case, including entry of a final judgment.

[2] Respondents electronically filed as exhibits to their original answer (ECF No. 12) the relevant parts of the state court record. They have also submitted a hard copy of the state court record.

which Petitioner and his co-defendants, Tyree Gaines and Richard Woodward, broke into a home

to steal drugs and money. Arika Hainesworth was shot and killed during the course of this criminal

episode and several other individuals were injured.

The joint trial for Petitioner and his co-defendants commenced on August 29, 2011.

Attorney Randall H. McKinney ("trial counsel") represented Petitioner. The trial court, in the

Appellate Rule 1925(a) opinion is issued after Petitioner filed a direct appeal, summarized the

evidence introduced at the trial as follows:[3]

> The evidence presented at trial established that Arika Hainesworth and her four (4) year old son, K, lived at [home address] in the City of Pittsburgh. Ms. Hainesworth's boyfriend, Anthony Lemon, stayed at the house occasionally, but was known to keep drugs and money in the house.
>
> In the early morning hours of July 11, 2010, [Petitioner], along with two other men, co-Defendants Tyree Gaines and Richard Woodward, broke into Hainesworth's residence for the purpose of stealing the drugs and money they knew to be in the house. The three (3) men initially approached the front door and knocked, then left. Hainesworth, who was at home watching movies with her friends and son, looked out of the peep-hole in the door and saw the men wearing black clothing and scarves over their faces. She called another friend, Terry Johnson, who had just left, and asked him to look around the area. Johnson did not see anyone and returned to Hainesworth's residence.
>
> Approximately fifteen minutes later, the three men knocked again. This time Johnson looked out the peep-hole and after seeing the three (3) men, he instructed everyone to go upstairs and hide and to call the police. The group hid in K's room, some inside the closet and some behind the bed. Hainesworth was on the phone with 911 when the men broke the front door down and entered the house. The men searched the downstairs level of the home, but were unable to find the drugs and money. Two (2) of the men went upstairs and broke down the door of the bedroom where everyone was hiding. They demanded that Hainesworth tell them where the drugs and money were, and when she did not, they grabbed K, put the gun to his head and asked him where the items were. K directed them to an air vent, where they found some money. They then let K go, but put the gun to Hainesworth's head and forced her to take them to the drugs. Hainesworth and the men went downstairs, when [Petitioner], who had been standing by the patio door with an assault rifle, yelled that the police had arrived. The men ran upstairs.
>
> [Petitioner] then fired a shot out the window at the police and the officers returned fire. Downstairs, City of Pittsburgh Police Officer Steven Sywyj had

---

[3] The state courts redacted the full name of Hainesworth's son in their opinions and referred to him only by his first initial, "K".

entered the house in pursuit of the men. He encountered Hainesworth and told her to get out of the house. As she fled, she was hit with a bullet fired from the house. Johnson came out of the room in an attempt to find and aid Hainesworth and was shot in the hand. Eventually, the [Petitioner] and Gaines jumped out of upstairs windows and were able to escape the police, but both were apprehended several days later. Woodward was shot while trying to escape and was apprehended at the scene.

(Resp's Ex. 11, Trial Ct. Op., ECF No. 12-1 at pp. 91-92.)

The trial court granted Petitioner's motion for judgment of acquittal as to first-degree murder and as to two charges of aggravated assault. At the conclusion of the trial, the jury convicted Petitioner and his co-defendants of second-degree murder and on the numerous other charges pending against them.

The trial court sentenced Petitioner on December 13, 2011 to a term of life imprisonment without parole on the second-degree murder conviction. It did not assess any further penalty on the other convictions. (Resp's Ex. 3, ECF No. 12-1 at pp. 33.)

Petitioner did not initially file a post-sentence motion or a direct appeal. However, the trial court later reinstated his post-sentence and direct appeal rights *nunc pro tunc* and appointed Attorney Scott Coffey ("direct appeal counsel") to represent him. (Resp's Ex. 6, ECF No. 12-1 at p. 66.) Petitioner then filed a counseled post-sentence motion. After the trial court denied that motion, Petitioner filed a counseled direct appeal to the Superior Court of Pennsylvania, in which he raised the following two claims:

1. The trial court erred in denying his post-sentence motion because the jury's verdict that he was guilty of second-degree murder was against the weight of the evidence "since the mere presence of his DNA on the gun that likely fired the fatal bullet, without any other supporting evidence that he fired that shot (he could have handled or possessed that gun after the person firing at the second story window abandoned the gun), shocks one's sense of justice?"

2. The trial court erred in denying his post-sentence motion since the evidence was insufficient to support his convictions of three counts of attempted homicide (Officers Sywyj, Vinansky & Copenhaver) and three counts of aggravated assault

(Officers Sywyj, Vinansky & Copenhaver) "since there was no evidence adduced at trial that [Petitioner] fired, or attempted to fire, a shot at any of the officers?"

(Resp's Ex. 12, ECF No. 12-1 at p. 100.)

The Superior Court affirmed Petitioner's judgment of sentence in *Commonwealth v. Ferguson*, No. 538 WDA 2013, slip op. (Pa. Super. Ct. Jan. 15, 2014) ("*Ferguson I*") (Resp's Ex. 14, ECF No. 12-1 at pp. 171-77.) It denied both of Petitioner's claims on the merits, holding:

> [Petitioner] argues that he was entitled to post-sentence relief because the evidence adduced in support of his convictions for attempted homicide, assault against law enforcement officers, and aggravated assault was insufficient as there was no evidence that [he] fired, or attempted to fire, a shot at any of the officers.
>
> - - -
>
> In this case, the trial court concluded that the evidence was sufficient to support [Petitioner's] convictions. The court reasoned that [Petitioner] "agreed and conspired with Woodward and Gaines to rob [Hainesworth's] house of drugs and money." Trial Court Opinion, 7/11/13, at 4. [Petitioner] also "took action in furtherance of the conspiracy," including invading [Hainesworth's] home with Woodward and Gaines, assisting them in their search for money and contraband, and serving as an armed lookout. *See id.* During the course of this criminal episode, [Johnson] received a gunshot wound, [Hainsworth] was fatally wounded, and several shots were fired at officers who responded to the scene, including Officers Sywyj, Vinansky, and Copenhaver.
>
> The trial court also determined that [Petitioner] never withdrew from the conspiracy. Hence, [Petitioner], as a participant in the conspiracy, was criminally liable for the actions of his co-conspirators committed in furtherance of the charged criminal enterprise, regardless of whether he acted as a principal in committing the underlying offense(s). *Id.* at 4-5, citing *Commonwealth v. Lambert*, 795 A.2d 1010, 1016 (Pa. Super. Ct. 2002), appeal denied, 805 A.2d 521 (Pa. 2002). The trial court's conclusions find ample support in the record and are free of legal error. Hence, the trial court correctly denied post-sentence relief predicated on [Petitioner's] sufficiency challenge.
>
> [Petitioner also] challenges the weight of the evidence offered in support of his conviction for second-degree murder. Here, [Petitioner] claims that he was entitled to post-sentence relief because his conviction was against the weight of the evidence as the Commonwealth proved only that his DNA was present on the gun that likely fired the fatal bullet but failed to prove that he actually fired the shot that killed the victim.
>
> - - -
>
> The trial court concluded, in large part based upon its sufficiency analysis, that the weight of the evidence supported [Petitioner's] convictions and that the verdict did not shock one's sense of justice. *See* Trial Court Opinion, 7/11/13, at 6. Based on our independent review of the parties' submissions, the trial court's opinion, and the certified record, we discern no abuse of discretion in the trial

court's conclusions. Hence, we conclude that [Petitioner's] weight claim merits no
relief.

(Resp's Ex. 14, *Ferguson I*, ECF No. 12-1 at pp. 175-77.)

The Supreme Court of Pennsylvania denied a petition for allowance of appeal on
June 11, 2014. Petitioner did not file a petition for a writ of certiorari with the United States
Supreme Court.

In May 2015, Petitioner filed a *pro se* motion for for collateral relief under Pennsylvania's
Post Conviction Relief Act ("PCRA"). (Resp's Ex. 19, ECF No. 12-1 at pp. 208-16.) The trial
court (now the "PCRA court") appointed Attorney Suzanne M. Swan ("PCRA counsel") to
represent him. In his counseled PCRA motion, Petitioner raised the following two claims:

> 1. Trial counsel was ineffective for conceding during closing argument that
> Petitioner was a co-conspirator and/or an accomplice in the robbery, and that he
> shot the victim while attempting to flee after the robbery.
>
> 2. Trial counsel was ineffective for failing to object to or request an immediate
> curative instruction when Detective Sherwood commented on Petitioner's silence
> in the face of incriminating evidence (a sweatshirt that had an ironed on photograph
> of Petitioner and co-defendant Gaines holding weapons).

(Resp's Ex. 18, ECF No. 12-1 at pp. 217-31.)

Ineffective assistance of counsel claims are governed by the familiar standard set forth by
the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). To prevail on a claim of
ineffective assistance under *Strickland*, the petitioner has the burden of establishing that "counsel's
representation fell below an objective standard of reasonableness." 466 U.S. at 688. *Strickland*
also requires that the petitioner demonstrate that he was prejudiced by his trial counsel's alleged
deficient performance. This places the burden on the petitioner to establish "that there is a

reasonable probability that, but for counsel's unprofessional errors," the result of his trial "would have been different." *Strickland*, 466 U.S. at 694.[4]

The PCRA court determined that no hearing was required and it denied Petitioner's request for post-conviction relief. (Resp's Ex. 23, ECF No. 12-1 at pp. 267-68.) Petitioner filed a counseled appeal to the Superior Court. The PCRA court then issued its Appellate Rule 1925(a) opinion explaining why each of Petitioner's claims lacked merit. (Resp's Ex. 26, ECF No. 12-1 at pp. 277-89.)

The Superior Court affirmed the PCRA court's decision in *Commonwealth v. Ferguson*, No. 537 WDA 2017, slip op. (Pa. Super. Ct. May 14, 2018) ("*Ferguson II*") (Resp's Ex. 29, ECF No. 12-1 at pp. 345-56). It denied both of Petitioner's claims on the merits, holding that Petitioner did not show that the actions of trial counsel prejudiced him. (*Id.* at pp. 350-56).

Specifically, in denying Petitioner's first claim of ineffective assistance, the Superior Court adopted the PCRA court's disposition of the issue. The PCRA court had explained that this claim had no merit because: (1) Petitioner admitted to being present at the scene and involved in the robbery and (2) analysis of the fatal bullet removed from the victim showed that it came from a gun with Petitioner's DNA on it. The PCRA court had further explained that, given the evidence, a conviction for murder was certain and the only uncertainty was the degree of culpability (whether

---

[4] Pennsylvania courts typically articulate *Strickland's* standard in three parts, while federal courts set it out in two. The legal evaluation is the same, and the differences merely reflect a stylistic choice on the part of state courts. *See, e.g. Commonwealth. v. Mitchell*, 105 A.3d 1257, 1266 (Pa. 2014) ("this Court has divided [*Strickland's*] performance component into sub-parts dealing with arguable merit and reasonable strategy. Appellant must, therefore, show that: the underlying legal claim has arguable merit; counsel had no reasonable basis for his act or omission; and Appellant suffered prejudice as a result."); *Commonwealth v. Sepulveda*, 55 A.3d 1108, 1117-18 (Pa. 2012) ("In order to obtain relief on a claim of ineffectiveness, a PCRA petitioner must satisfy the performance and prejudice test set forth in *Strickland*[.]").

the jury would convict Petitioner of second or third degree murder).[5] Thus, trial counsel's strategy in closing arguments was to portray Petitioner as shooting the victim recklessly (third-degree murder) as opposed to doing so in furtherance of an underlying felony (second-degree murder). The Superior Court agreed with the PCRA court that, "[g]iven the overwhelming forensic evidence placing [Petitioner] at the scene and identifying him as the shooter," Petitioner failed to establish that he was prejudiced by his counsel's chosen strategy. (*Id.* at pp. 350-52; Resp's Ex. 26, PCRA Ct. Op., ECF No. 12-1 at pp. 282-83.)

With respect to Petitioner's second claim of ineffective assistance, the specific exchange at issue occurred during cross-examination of Detective Sherwood, when Gaines' attorney highlighted the fact that the Commonwealth could not authenticate the photograph on the sweatshirt that depicted Petitioner and Gaines holding weapons:

> Q. [Gaines' counsel]: The only thing factually in this case that photo proves is that presumptively [Petitioner], despite what he told detectives when he gave them a statement, knew Tyree Gaines, right?
>
> A. If we go by everything else you just asked me, no. They could have been photo-shopped together.
>
> Q. Exactly.
>
> A. Yeah, I mean—
>
> Q. So there is no authentication whatsoever of this photograph; is there?
>
> A. Not unless [Gaines] or [Petitioner] want to do that.

(Trial Tr., 8/31/11, at p. 517.)

---

[5] Under Pennsylvania law, the mandatory sentence for a conviction of second-degree murder is life in prison, while the maximum term that can be imposed on a conviction of third-degree murder is twenty to forty years in prison. 18 Pa. Cons. Stat. §§ 2501, 1102.

Petitioner argued to the Superior Court that Detective Sherwood's final comment impermissibly called attention to his failure to testify. Therefore, he contended, trial counsel should have objected or requested an immediate curative instruction.

The Superior Court, adopting the PCRA court's disposition, held that the detective's response was: (1) at least in part purposely elicited by Gaines' counsel and (2) designed to elicit the very response that was provided, *i.e.*, that the photograph on the sweatshirt did not establish that Petitioner and Gaines knew each other because it could have been photoshopped, and that the Commonwealth could not, in fact, authenticate the picture. (Resp's Ex. 29, *Ferguson II*, ECF No. 12-1 at p. 354) ("In other words, Detective Sherwood's response was favorable to [Petitioner], as she discounted the evidentiary value of the photograph"). The Superior Court further reasoned that the detective's comment was not made in a context that would suggest that Petitioner's silence was a tacit admission of guilt. It also held that the Commonwealth did not solicit, repeat, or highlight the detective's comment in any way. (*Id.* at pp. 354-55.)

"Thus," the Superior Court held, "the sole reference to [Petitioner's] decision not to testify at trial was limited to Detective Sherwood's brief comment about how the photographs could be authenticated." (*Id.* at p. 354.) The Superior Court determined that, given the strength of the evidence against Petitioner and the minimal effect the detective's comments could have had on the verdict, Petitioner failed to prove that he was prejudiced by counsel's lack of objection. (*Id.* at p. 355) ("Our review discloses that the jury was presented with a taped statement made to police by [Petitioner], wherein he admitted that he was at [the victim's] house with a gun to extort drugs. Additionally, [Petitioner's] blood was found on the .9 mm Glock from which ballistics established the fatal bullet was shot. We conclude that ample proof was presented to convict [Petitioner], effectively neutralizing any minimal prejudicial effect from the detective's improper comment.")

After the Superior Court issued *Ferguson II* Petitioner filed a counseled petition for allowance of appeal with the Supreme Court of Pennsylvania, which was denied on October 15, 2018. (Resp's Ex. 33, ECF No. 12-1 at p. 395.) Petitioner then filed with the Supreme Court of Pennsylvania a *pro se* "application of extraordinary relief" in which he asserted, without further explanation, that his incarceration was unconstitutional because evidence that should have been excluded was introduced at trial. (Resp's Ex. 34, ECF No. 12-1 at pp. 396-98*.*) The Supreme Court summarily denied that application in a one-sentence order dated February 15, 2019. (Resp's Ex. 37, ECF No. 28-1.)

In the meantime, in December 2018 Petitioner commenced this federal habeas case by filing a petition for a writ of habeas corpus. (ECF No. 1.) In his original petition, he raised four claims titled "ineffective assistance of counsel," "abuse of discretion by trial court," "malicious prosecution," and "judicial misconduct." Petitioner followed those titles only with strings of citations to United States Supreme Court cases. Nowhere in his petition did he identify what his specific claims were. (*Id.* at pp. 4-10.)

In their answer to the original petition (ECF No. 12), Respondents asserted that Petitioner's claims were so vague that he failed to meet the pleading requirements under Rule 2(c) of the Rules Governing Section 2254 Cases in the United States District Courts.[6] They further asserted that any claim that Petitioner did not raise to the Superior Court in either his direct or PCRA appeal was procedurally defaulted.

---

[6] Rule 2(c) of the Rules Governing Section 2254 Cases in the United States District Courts requires that a habeas petition must "specify all the grounds for relief available to the petitioner" and "state the facts supporting each ground." Merely asserting legal conclusions does not fulfill the requirements of Rule 2(c). *Mayle v. Felix*, 545 U.S. 644 (2005).

This Court subsequently granted Petitioner's motion to file an amended petition. (*See* ECF Nos. 21, 22, 26.) In July 2020, Petitioner filed the instant amended petition (ECF No. 26), which is his operative pleading. He raises the following three claims for relief:

Claim One:

Trial counsel was ineffective because he failed to: (a) investigate and interview Petitioner's requested witnesses; (b) strategize or develop an effective legal defense; or (c) make "a significant objection to any of the multiple deviations of law during the trial"; and

Direct appeal counsel was ineffective because he "didn't raise all reversal claims such as the bad jury instructions."

Claim Two:

The trial court erred when it: (a) "permitted inadmissible information as evidence obtained unconstitutionally, and in violation of…Petitioner's right to due process and equal protection under our laws"; (b) "misled the jury regarding elements of crimes while usurping jurisdiction not delegated to it by the Information filed by the D.A.'s Office"; and (c) imposing an illegal sentence of imprisonment;

Claim Three:

The prosecution engaged in misconduct because the "assistant district attorney assigned to prosecute this matter knowingly, willfully, and illegally, introduced an item as evidence which was not only obtained illegally but it also didn't allow [Petitioner's] attorney with the opportunity to examine the authenticity of it, but presented it as it was clearly explained to me, and verified through Lexis Nexis."

(*Id.* at pp. 5-8). Petitioner does not provide any further factual support for, or explanation of, his claims. For example, he does not identify: the individuals trial counsel failed to interview or call as defense witnesses; which part of the jury instruction was allegedly incorrect; which claims direct appeal counsel should have raised on appeal; what evidence the trial court permitted to be admitted in violation of his rights; how his sentence was illegal; or what was the allegedly illegally obtained evidence introduced by the assistant prosecutor.

In their answer (ECF No. 28) to the amended petition, Respondents contend that Petitioner procedurally defaulted any claim he did not also raise to the Superior Court on direct appeal or in

his PCRA proceeding. They also point out that Petitioner failed to state facts that would support his claims for relief or offer any evidence or proof to support his allegations.

After Respondents filed their answer, Petitioner filed a motion for an extension to file a reply. (ECF No. 29.) The Court granted his motion and ordered that his reply was due by November 23, 2020. (ECF No. 30.) Petitioner did not file a reply or request another extension to file one.

## II.    Discussion

The "exhaustion doctrine" requires that a state prisoner raise his federal constitutional claims in state court through the proper procedures before he litigates them in a federal habeas petition. *See, e.g., Lambert v. Blackwell*, 134 F.3d 506, 513 (3d Cir. 1997). It is "grounded in principles of comity; in a federal system, the States should have the first opportunity to address and correct alleged violations of state prisoner's federal rights." *Coleman v. Thompson*, 501 U.S. 722, 731 (1991). It "is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts[.]" *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

Importantly, the Supreme Court has held that a petitioner must have "invoke[d] one complete round of the State's established appellate review process[,]" in order to satisfy the exhaustion requirement. *Id*. In Pennsylvania, this requirement means that a petitioner in a non-capital case such as this one must have first presented every federal constitutional claim raised in his federal habeas petition to *the Superior Court either on direct or PCRA appeal. See, e.g., Lambert v. Blackwell*, 387 F.3d 210, 233-34 (3d Cir. 2004).

The doctrine of procedural default, like the doctrine of exhaustion, is "grounded in concerns of comity and federalism," *Coleman*, 501 U.S. at 730. It provides that a Pennsylvania

11

state prisoner in a non-capital case defaults a federal habeas claim if he: (1) failed to present it to the Superior Court and he cannot do so now because the state courts would decline to address the claim on the merits as state procedural rules (such as, for example, the state's waiver rules or the PCRA's one-year statute of limitations) bar such consideration; or (2) failed to comply with a state procedural rule when he presented the claim to the state court, and for that reason the Superior Court declined to address the federal claim on the merits. *See, e.g., Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *O'Sullivan v. Boerckel*, 526 U.S. 838, 851-56 (1999) (Stevens, J. dissenting) (describing the history of the procedural default doctrine); *Wainwright v. Sykes*, 433 U.S. 72 (1977); *Lines v. Larkins*, 208 F.3d 153, 162-69 (3d Cir. 2000).

The first scenario is what has occurred here. Petitioner did not properly exhaust any of the claims he raised in the amended petition because he did not raise them to the Superior Court in either his direct or PCRA appeal. Because he cannot return to state court and now attempt to litigate his claims because they would be barred by state waiver rules and also by the PCRA's one-year statute of limitations, he has procedurally defaulted each of his claims.

A petitioner may avoid the default of a claim by demonstrating "cause for the default and actual prejudice as a result of the alleged violation of federal law[.]" *Coleman*, 501 U.S. at 750. "'Cause' under the cause and prejudice test must be something external to the petitioner, something that cannot fairly be attributed to him[.]" *Id.* at 753 (emphasis in original). Petitioner does not invoke the "cause" and "actual prejudice" exception to the procedural default doctrine.[7]

---

[7] For example, Petitioner does not allege that PCRA counsel was ineffective for failing to raise any of the ineffective-assistance-of-trial-counsel claims he raised in Claim One. *See Martinez v. Ryan*, 566 U.S. 1 (2012) (creating a narrow exception to the general rule that a petitioner cannot rely upon PCRA counsel's ineffectiveness to establish the "cause" necessary to overcome the default of a federal habeas claim; permitting a petitioner to overcome the default of a claims of trial counsel's ineffectiveness if he demonstrates that: (1) the claim is "substantial" and (2) he *Footnote continue on next page…*

A petitioner may also avoid the default of a claim by demonstrating that the federal habeas court's failure to consider it will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750. This type of "gateway" actual innocence claim requires evidence of "actual innocence" that is "so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error[.]" *Schlup v. Delo*, 513 U.S. 298, 316 (1995); *see, e.g.*, *Reeves v. Fayette, SCI*, 897 F.3d 154, 157 (3d Cir. 2018). The Supreme Court has cautioned that "tenable actual-innocence gateway pleas are rare[,]" *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013), and that "[t]he gateway should open only when a petition presents 'evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error.'" *Id.* at 401 (quoting *Schlup*, 513 U.S. at 316). This is not one of those rare cases where the actual-innocence gateway would apply.

Based upon all of the foregoing, Petitioner has procedurally defaulted each of the claims he raised in his amended petition and they are denied for that reason.[8]

---

either had no PCRA counsel or PCRA counsel was ineffective within the meaning of *Strickland* for failing to raise the claim to the PCRA court); *see also Davila v. Davis*, 137 S. Ct. 2058, 2062 (2017) (the holding in *Martinez* is limited to defaulted claims asserting that trial counsel was ineffective and does not apply to any other type of defaulted claim).

[8] Respondents state that if in Claim One Petitioner attempted to bring a claim of trial counsel's ineffectiveness that he also raised in his PCRA proceeding, the Court should deny that claim on the merits. The Court does not read Claim One as bringing either of the claims Petitioner raised in his PCRA proceeding. However, the Court further notes that because the Superior Court denied those claims on the merits, the Antiterrorism and Effective Death Penalty Act's ("AEDPA's") deferential standard of review, codified at 28 U.S.C. § 2254(d), would apply to this Court's review of them. The Superior Court's adjudication withstands AEDPA's standard of review because Petitioner did not demonstrate that its decision was "contrary to, or involved an unreasonable application of" *Strickland*, or that it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (2).

**III.     Certificate of Appealability**

AEDPA codified standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. It provides that "[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from…the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court[.]" 28 U.S.C. § 2253(c)(1)(A). It also provides that "[a] certificate of appealability may issue...only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2).

"When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Applying that standard here, jurists of reason would not find it debatable whether each of Petitioner's claims should be denied because they are procedurally defaulted. Accordingly, the Court will not issue a certificate of appealability on any of Petitioner's grounds for relief.

**IV.     Conclusion**

Based upon the foregoing, the Court will deny the amended petition (ECF No. 26) and will deny a certificate of appealability.

An appropriate Order follows.

Date:  May 24 , 2021

/s/ Patricia L. Dodge
PATRICIA L. DODGE
United States Magistrate Judge